UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL ELLIS,

        Petitioner,

                                          CASE NO. 06-CV-12302
v.                                        HONORABLE JOHN CORBETT O'MEARA

RAYMOND BOOKER,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DENYING A CERTIFICATE OF APPEALABILITY AND
LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS**

**I.    Introduction**

Michigan prisoner Michael Ellis ("Petitioner"), through counsel, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights. Petitioner was convicted of second-degree murder and possession of a firearm during the commission of a felony following a jury trial in the Wayne County Circuit Court in 2002. He was sentenced to consecutive terms of 18 to 40 years imprisonment and two years imprisonment on those convictions. In his pleadings, Petitioner raises claims concerning the admission of his police statement and the sufficiency of the evidence. For the reasons stated below, the Court denies the petition for writ of habeas corpus. The Court also denies a certificate of appealability and leave to proceed on appeal *in forma pauperis*.

1

## II. Facts and Procedural History

Petitioner's convictions arise from the shooting death of Robert Daniels, his sister's abusive ex-boyfriend, at Petitioner's home in Detroit, Michigan on June 17, 2001. The Michigan Court of Appeals set forth the facts of the shooting, which are presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 Fed. Appx. 730 (6th Cir. 2002), as follows:

> Mr. Daniels was the ex-boyfriend of defendant's sister, Karen Ellis. Ms. Ellis left Mr. Daniels in February of 2000, following an eight-year abusive relationship. However, Ms. Ellis testified that the violence did not end with the relationship. Ms. Ellis further testified that the night before the shooting, Mr. Daniels choked her in her home. When Mr. Daniels allowed her to take the couple's children to a neighbor's house, Ms. Ellis called the police and hid in the basement while Mr. Daniels stalked her with a gun.
>
> On June 17, 2001, Ms. Ellis took her children to her mother's home and related the events of the previous evening to her family. Mr. Daniels arrived with a friend asking for his son. Mr. Daniels returned to his car and began to leave when defendant returned home. Mr. Daniels then walked back to the house and opened the door. When he did, defendant shot him twice with a rifle, killing him.
>
> Defendant testified that he retrieved his rifle to frighten Mr. Daniels away. Defendant also testified that his friend, Marc Perry, indicated that Mr. Daniels had a gun, and that he believed he saw a gun in Mr. Daniels's hand. Defendant admitted that he shot Mr. Daniels twice and then shut and locked the front door. Defendant further testified that Mr. Perry had a weapon and shot at Mr. Daniels's vehicle before the two ran away.

*People v. Ellis*, No. 246709, 2004 WL 1737680, *1 (Mich. Ct. App. Aug. 3, 2004) (unpublished).

Following his convictions, Petitioner filed an appeal as of right with the Michigan Court of Appeals raising several issues, including his claims concerning the admission of his police statements and the sufficiency of the evidence. The Michigan Court of Appeals affirmed his convictions. *Id.* Petitioner also filed an application for leave to appeal with the Michigan

2

Supreme Court, which was denied. *People v. Ellis*, 472 Mich. 912, 696 N.W.2d 714 (2005).

Petitioner, through counsel, thereafter submitted his federal habeas petition asserting the following claims:

> I.  Petitioner's confession was involuntary as it was obtained in violation of his right to counsel, and the trial court erred in denying his motion to suppress his confession.
>
> II. Petitioner's conviction for second-degree murder should be reversed where the evidence was insufficient to support the verdict.

Respondent has filed an answer to the petition asserting that it should be denied for lack of merit.

## III. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, governs this case because Petitioner filed his petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and

nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "In order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow,

4

J.).

Lastly, this Court must presume that state court factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV.    Analysis**

    A.    <u>Involuntary Statement Claim</u>

Petitioner first asserts that he is entitled to habeas relief because the trial court erred in admitting his statements to police. Petitioner claims that his statements were involuntary and obtained in violation of his right to counsel. Respondent contends that this claim lacks merit.

The Michigan Court of Appeals set forth the relevant facts for this claim, which are presumed correct, *see Monroe*, 197 F. Supp. 2d at 758, as follows:

> Following the shooting, defendant's family retained attorney George Garris to represent defendant. Defendant made arrangements to meet Mr. Garris in his office on the morning of June 21, 2001, and travel together to turn himself in to Detroit police. However, defendant was arrested that same morning at 4:30 a.m., while sitting in a car outside a hotel in the city of Livonia. Defendant told the arresting officer that he was wanted for a murder in the city of Detroit, and was released to Detroit police officers at 5:45 a.m. Defendant was eighteen years old at the time of his arrest and had completed the eleventh grade.
>
> Detroit police officer Russell Solano was the first to question defendant at 6:35 a.m., followed shortly thereafter by Officer Miguel Bruce at 8:00 a.m. Officer Solano and Officer Bruce both testified to reading defendant his *Miranda* rights and indicated that defendant signed a waiver form. Both defendant and his mother, Doris Ellis, testified that he had consumed alcohol that night. Defendant asserted that he was intoxicated, however, the officers testified that defendant did not appear to be intoxicated or otherwise under the influence of any drug at the time. Officer Solano testified that defendant denied being tired, but defendant testified that he had not slept that night and kept falling asleep while waiting to be questioned. Defendant testified that he asked Officer Solano to allow him to call his attorney, but his request was denied. The officers testified that defendant agreed to speak to them and never requested an attorney. Defendant also asserts that, before the second interview, Officer Bruce told defendant that the police

5

>knew that Mr. Daniels was causing problems with the family and that it appeared that defendant acted in self defense. However, both officers denied having such knowledge about the case prior to questioning defendant.
>
>In denying defendant's motion to suppress the statements, the trial court specifically stated that "the Court is free to observe the demeanor of the witness, and the Court finds the defendant was not very credible." The trial court found defendant's acts of waiving his rights and admittedly voluntarily giving a statement inconsistent with his contention that his request for his attorney was denied. Both officers testified that defendant's statements were voluntarily made after defendant received and waived his *Miranda* rights, and the trial court considered their testimony more credible than that of defendant.

*Ellis*, 2004 WL 1737680 at *1-2 (footnote omitted).

The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions. *Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986). A confession is considered involuntary if: (1) the police extorted the confession by means of coercive activity; (2) the coercion in question was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overborne "because of the coercive police activity in question." *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988).

The voluntariness of a confession is a mixed question of law and fact. *Thompson v. Keohane*, 516 U.S. 99, 108-11 (1995). In determining whether a confession is voluntary, the ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton*, 474 U.S. 104, 112 (1985). Those circumstances include:

1. Police Coercion (a "crucial element")
2. Length of Interrogation
3. Location of Interrogation
4. Continuity of Interrogation
5. Suspect's Maturity
6. Suspect's Education
7. Suspect's Physical Condition & Mental Health

### 8. Whether Suspect Was Advised of *Miranda* Rights

*Withrow v. Williams*, 507 U.S. 680, 693-94 (1993). All of the factors involved in the giving of the statement should be closely scrutinized. *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). Without coercive police activity, however, a confession should not be deemed involuntary. *Connelly,* 479 U.S. at 167 ("coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause"). Coercion may be psychological, as well as physical. *See Arizona v. Fulminante*, 499 U.S. 279, 285-89 (1991); *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994). Police trickery alone, however, will not invalidate an otherwise voluntary statement. *See Frazier v. Cupp*, 394 U.S. 731, 737-39 (1969); *Ledbetter*, 35 F.3d at 1067-68. The burden of proving that a confession was obtained involuntarily rests with the petitioner. *See Boles v. Foltz*, 816 F.2d 1132, 1136 (6th Cir. 1987). Voluntariness need only be established by a preponderance of the evidence. *Id.*

The Fifth Amendment also protects an accused from compulsory self-incrimination. The prohibition against compelled self-incrimination requires that a custodial interrogation be preceded by advice that the suspect has the right to an attorney and the right to remain silent. *See Miranda v. Arizona*, 384 U.S. 436, 479 (1966); *see also Dickerson v. United States*, 530 U.S. 428, 432 (2000) ("*Miranda* and its progeny . . . govern the admissibility of statements made during custodial interrogation in both state and federal courts."). If the suspect invokes his right to counsel, "the interrogation must cease until an attorney is present." *Miranda*, 384 U.S. at 474. When a suspect has invoked the right to counsel during custodial interrogation, the suspect may not be "subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges,

7

or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).

In *Davis v. United States*, 512 U.S. 452, 459 (1994), the United States Supreme Court clarified that the request for counsel must be express and unambiguous in order to require the cessation of questioning. *See also United States v. Dupree*, 323 F.3d 480, 486 (6th Cir. 2003). If a suspect's reference to counsel is ambiguous or equivocal, the police have no obligation to stop questioning him. *Davis*, 512 U.S. at 459. A suspect must sufficiently articulate his desire for counsel so that a reasonable police officer under the circumstances would understand the statement to be a request for an attorney. *Id.*

In this case, the Michigan Court of Appeals deferred to the trial court's credibility determinations regarding the testimony of the police officers and Petitioner at the evidentiary hearing and concluded that the trial court properly denied Petitioner's motion to suppress his custodial statements. *See Ellis*, 2004 WL 1737680 at *2.

This Court finds that the Michigan Court of Appeals' determination is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. The record reveals that Petitioner was 18 years old and had an 11th Grade education at the time of his arrest, that he made his statements at the police station after being advised of his constitutional rights, that he was in custody for approximately two hours before making his first statement and approximately three and one-half hours before making his second statement, and that he was questioned by two officers for only a few hours, and that he was not deprived of food, water, or any other necessity. Although Petitioner was questioned early in the morning and testified that he had been drinking and had not slept that night, the interrogating officers testified that he was coherent, cooperative, and responsive during questioning and that he did not appear to be

intoxicated or under the influence of drugs. The officers further testified that Petitioner was cooperative and that they did not use coercive tactics to elicit his statements. The trial court found the police officers' testimony to be credible and denied the motion to suppress. The credibility of witnesses and whether in fact the police engaged in coercive activity fall within the category of issues to which the presumption of correctness is applied. *See* 28 U.S.C. § 2254(e)(1); *Miller*, 474 U.S. at 112; *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (deferring to state court's finding that police officer testimony regarding voluntariness of statement was credible); *see also Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) (federal habeas courts do not redetermine the credibility of witnesses whose demeanor has been evaluated by the state court). Petitioner has not rebutted this presumption with clear and convincing evidence. He has thus failed to establish that he was subject to police coercion sufficient to overcome his will or that his police statements were involuntary.

Petitioner has also not shown that his police statements were taken in violation of his right to counsel. Although Petitioner testified that he asked to call his attorney during his interrogation, the record reveals that he signed a constitutional rights form and the interrogating officers testified that he spoke to them voluntarily and did not request the presence of counsel. As noted, the trial court found the police officers' testimony to be credible. Petitioner has failed to rebut this presumption with clear and convincing evidence. He has thus failed to establish that his police statements were taken in violation of his right to counsel. *See Pritchett*, 117 F.3d at 963; *Walendzinski v. Renico,* 354 F. Supp. 2d 752, 759 (E.D. Mich. 2005) (Gadola, J.). Habeas relief is not warranted on this claim.

    C.    <u>Insufficient Evidence Claim</u>

Petitioner also asserts that he is entitled to habeas relief because the prosecution failed to present sufficient evidence to support his second-degree murder conviction. In particular, Petitioner asserts that the prosecution failed to establish that he acted with the requisite malice to sustain his murder conviction. Respondent contends that this claim lacks merit.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the United States Supreme Court established that the standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state court's application of the *Jackson* standard was reasonable. In making this determination, the Court must presume that the state court's factual findings are correct, unless rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Warren*, 161 F.3d at 360-61.

Under Michigan law, the common law crime of murder is defined as second-degree murder and is punishable by up to life imprisonment. *See* MICH. COMP. LAWS § 750.317. To establish second-degree murder, the prosecution must prove that the defendant killed a human being with malice aforethought. In order to show malice aforethought, the prosecution must establish that the defendant had: (1) the intent to kill; (2) the intent to commit great bodily harm; or (3) the intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result. *See People v. Dykhouse*, 418 Mich. 488, 495, 345 N.W.2d 150 (1984). Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of the crime, *see People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including a defendant's intent or state of mind. *See*

*People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997).

Applying the *Jackson* standard, the Michigan Court of Appeals found that the prosecution presented sufficient evidence to support Petitioner's second-degree murder conviction based upon Petitioner's admissions that he shot at Robert Daniels twice with a rifle, that he intended to kill him, that Daniels was unarmed, and that he could have locked the door before Daniels approached the house. *See Ellis*, 2004 WL 1737680 at *3.

Having reviewed the record, this Court finds that the Michigan Court of Appeals' determination in this regard is neither contrary to *Jackson* nor an unreasonable application of federal law or the facts. Petitioner's use of a rifle and his admission that he shot the victim with the intent to kill him demonstrates his intent and provides ample evidence to support his second-degree murder conviction. Although there was evidence that Daniels was abusive and had threatened Petitioner's family members, the record also indicates that Daniels was unarmed and that neither Petitioner nor his family was in imminent danger at the time of the shooting so as to support his self-defense claim. Petitioner has not demonstrated that the state court's conclusion that the facts establish his guilt beyond a reasonable doubt is unreasonable.

Petitioner's insufficient evidence claim attacks the inferences that the jury drew from the testimony and evidence presented at trial. Such determinations, however, are not matters for federal habeas review. "A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). It is the job of the jury, not a federal habeas court, to resolve evidentiary conflicts. *See Jackson*, 443 U.S. at

326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). Given the evidence at trial, this Court concludes that the Michigan Court of Appeals' determination that a rational trier of fact could find the elements of second-degree murder beyond a reasonable doubt was reasonable. Habeas relief is not warranted on this claim.

**V.     Conclusion**

Having reviewed the record, the Court concludes that the state courts' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner is thus not entitled to habeas relief on the claims contained in his petition.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims. A certificate

of appealability is not warranted. The Court further concludes that Petitioner should not be granted leave to proceed on appeal *in forma pauperis* as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

Accordingly;

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** and that leave to proceed on appeal *in forma pauperis* is **DENIED**.

s/John Corbett O'Meara
United States District Judge

Date: February 21, 2008

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, February 21, 2008, by electronic and/or ordinary mail.

s/William Barkholz
Case Manager